UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

J & J SPORTS PRODUCTIONS, INCORPORATED,

        Plaintiff,                            Case No. 17-cv-11897

v.                                                Honorable Thomas L. Ludington

PERR'S PUB, INC., and MICHAEL J. PERRY,

        Defendants.

_____/

**OPINION AND ORDER DISMISSING ORDER TO SHOW CAUSE AND GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR DEFAULT JUDGMENT**

On June 14, 2017, Plaintiff J & J Sports Productions, Inc., filed a complaint against Defendants Perr's Pub, Inc., and Michael J. Perry alleging that the Defendants illegally aired the 2015 Mayweather-Pacquiao boxing match without entering into a licensing agreement with Plaintiff. ECF No. 1. Defendants were timely served, but did not file a response within the deadline provided by the Federal Rules of Civil Procedure. ECF Nos. 5, 6. Several weeks after the deadline to answer passed, the Court directed the Plaintiff to show cause why this case should not be dismissed for failure to prosecute. ECF No. 7. In response, Plaintiff indicated that the parties had been unsuccessfully pursuing settlement and separately requested Clerk's Entry of Default. ECF Nos. 8, 9. The Clerk of Court entered default, but Plaintiff did not move for entry of default judgment. On August 29, 2017, the Court dismissed the order to show cause and directed Plaintiff to either file a motion seeking entry of default judgment or explain why no motion was forthcoming on or before September 22, 2017. ECF No. 11. No response was received by that deadline.

On September 11, 2017, Defendants (proceeding pro se) filed an answer to the complaint wherein they contend that they showed the fight with permission. ECF No. 12. On September 19, 2017, Defendants filed a supplementary answer requesting that the Court dismiss the suit with prejudice. ECF No. 13. Finally, on September 29, 2017, Plaintiff filed a motion for default judgment against Perr's Pub and for judgment on the pleadings against Michael J. Perry. ECF No. 15. Plaintiff further filed a response to the Court's prior order to show cause. ECF No. 16. Plaintiff indicated that Defendants had previously been represented by counsel and that Plaintiff had delayed requesting default judgment while settlement negotiations proceeded. Eventually, negotiations broke down and Defendants' counsel withdrew from representing Defendants. On October 10, 2017, Michael Perry filed a pro se response to the show cause order reiterating his belief that he has not engaged in any illegal action and requesting "a reasonable amount of time" to retain another attorney. ECF No. 17.

A hearing on Plaintiff's motion for judgment on the pleadings and for default judgment was held on October 24, 2017. For the following reasons, the order to show cause will be dismissed and Plaintiff's motion for judgment will be granted.

**I.**

The well-pleaded factual allegations in Plaintiff's complaint (along with the few allegations that Defendant Michael Perry has untimely contested) will be summarized. Plaintiff J & J Sports Productions, Inc., is a California Corporation which "paid for and was thereafter granted the exclusive nationwide television distribution (closed-circuit) rights to the 'Fight of the Century' Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program." Compl. at 3–4. Perr's Pub is a Michigan corporation, owned and operated by Michael J. Perry. *Id.* at 3. J & J Sports alleges that it "entered into . . . sublicensing agreements with various commercial entities

throughout North America, including entities within the State of Michigan, by which it granted these entities limited sublicensing rights[,] specifically the rights to publically exhibit the Program to the patrons within their respective establishments . . . on a pay-per-view basis." *Id.* at 4–5.

> J & J Sports further alleges that
>
> on May 2, 2015, Defendant(s) Michael J Perry was/were the owner(s) . . . and/or an individual(s) with dominion, control, oversight and management of the commercial establishment Perr's Pub, Inc., . . . and was either aware of the unauthorized display of the program, . . . and tacitly or explicitly approved same or was physically present at the time the program was displayed, and in either event had actual or constructive knowledge of the display of the program in the commercial establishment.

*Id.* at 4. Additionally, "[s]aid unauthorized interception . . . by each of the Defendants was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain." *Id.* at 5.

In his pro se response, Michael J. Perry states: Were [sic] a small bar who did show the Mayweather & Pacquiao fight. We had no idea there was even a J&J Sports Production in existence. If that was the case we would have never showed the fight." Supp. Ans. at 1, ECF No. 13. Perry separately explains: "We paid Dish to show the fight [illegible] Mayweather & Pacquaio & now were [sic] being sued by J&J Sports Productions Inc." Ans. at 1, ECF No. 12. Perry attaches a copy of the complaint with several handwritten responses. Specifically, Perry admits that venue is proper, admits that Perr's Pub is a Michigan corporation located in Saginaw Michigan, denies that the complaint lists his correct address, and denies that he was aware of the unauthorized display of the program, tacitly or explicitly approved its display, or had actual or constructive knowledge that the program was displayed in a commercial establishment. *Id.* at 2–4.

J & J Sports lists three claims for relief in its complaint. First, J & J Sports alleges that Defendants violated 47 U.S.C. § 605 (The Communications Act of 1934), which prohibits the unauthorized publication or use of communications. Compl. at 4–6. Next, J & J Sports alleges that Defendants violated 47 U.S.C. § 553, which prohibits the unauthorized reception of cable service. *Id.* at 6–8. Finally, J & J Sports alleges that Defendants committed common law conversion. *Id.* at 8. J & J Sports requests $110,000 for violation of Count One, $60,000 for violation of Count Two, and compensatory damages, exemplary damages, punitive damages, and treble damages pursuant to Count Three. *Id.* at 9–10. Plaintiff likewise requests a reasonable attorney fees award pursuant to each Count.

## II.

A judgment by default may be entered against a defendant who has not pleaded or otherwise defended against an action. Fed. R. Civ. P. 55(b). Before a default judgment may enter, a party first must obtain a default. Fed. R. Civ. P. 55(a). Once a default is entered, the defendants are considered to have admitted the well pleaded allegations in the complaint, including jurisdiction. *Ford Motor Company v. Cross*, 441 F.Supp.2d 837, 845 (E. D. Mich. 2006) (citing *Visioneering Construction v. U.S. Fidelity and Guaranty*, 661 F.2d 119, 124 (6th Cir. 1981)). Here, Plaintiff properly obtained a default against Defendants, and the clerk certified that a notice of default was served on Defendants. ECF Nos. 8, 10.

After a party secures the entry of default, the party may apply for a default judgment. Fed. R. Civ. P. 55(b). In reviewing an application for a default judgment, "[t]he court may conduct hearings or make referrals … when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). While the well-pleaded

factual allegations in the complaint are taken as true when a defendant is in default, damages are not. *Ford Motor Company*, 441 F.Supp.2d at 848 (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)). The Court must determine the propriety and amount of the default judgment where the damages sought are not for a sum certain. *See* Fed. R. Civ. P. 55(b). "Ordinarily, the District Court must hold an evidentiary proceeding in which the defendant has the opportunity to contest the amount [of damages]." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (internal quotation and citation omitted). However, Rule 55 gives the court the discretion to determine whether an evidentiary hearing is necessary, or whether to rely on detailed affidavits or documentary evidence to determine damages. *Stephenson v. El Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008).

### III.

### A.

The threshold issue is whether Perry's pro se filings should be construed as answers to the complaint for one or both Defendants and, if so, what impact those filings have. Pursuant to Federal Rule of Civil Procedure 55, entry of default judgment proceeds in two steps. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the plaintiff may request the Clerk's Office to enter "default." Rule 55(a). However, "[t]he entry of default does not itself resolve any party's liability. Only a subsequent default judgment will have that effect. But the entry of default is still an important step in the process because, once the entry of default is made, the party in default cannot answer or otherwise contest liability." Federal Rule of Civil Procedure 55, Practice Commentary. *See also VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016).

In this matter, Plaintiff sought and obtained entry of default against Defendants prior to any answer being filed. At this point, Defendants could not cure their default by filing an answer. Rather, Defendants' remedy would be to move to set aside the default pursuant to Rule 55(c) ("The court may set aside an entry of default for good cause."). Neither Defendant has expressly moved the Court to set aside the default, and so any answer that either Defendant might have filed is irrelevant.[1]

Nevertheless, Perry is pro se, and pro se filings must be construed liberally. *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 358 (6th Cir. 2012). Accordingly, Perry's post-default filings will be construed as requests to set aside the default. Because, even accepting all representations in those filings as true, Perry does not contest his liability for the underlying violations, good cause to set aside the default does not exist.

Even liberally construed, Perry's pro se filings assert merely (1) that he was unaware of J & J Sport's existence until sued, and (2) he paid Dish to view the fight but did not pay for a commercial license from Plaintiff. *See* Answ. & Supp. Answ., ECF Nos. 12, 13.[2] Neither fact operates as a defense to Plaintiff's allegations, much less a rationale for why the default should be set aside. Thus, accepting the well-pleaded factual allegations as true, Plaintiff has stated claims for violation of 47 U.S.C. § 605, 47 U.S.C. § 553, and common law conversion. The only outstanding issue is calculation of damages.

---

[1] Plaintiff asks this Court to confirm that Perry cannot represent Perr's Pub pro se. That is correct. "It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993). Thus, any pro se filing submitted by Perry must be construed as filed on his behalf only.

[2] Perry also wrote "false" after a paragraph in the complaint asserting that he had actual or constructive knowledge that the program was displayed." Ans. at 4. That assertion is inconsistent with his acknowledgment, in the same document, that the bar showed the fight. And Perry does not dispute other allegations in the answer which assert that willfully exhibited the fight for purposes of commercial and private financial gain. *See* Compl. at 5. Thus, Perry does not appear to contest that the fight was shown for commercial gain. To the contrary, he appears to concede that point. More importantly, at the hearing, Perry made clear that the fight was shown with his knowledge.

**B.**

Plaintiff limits its briefing regarding damages to Count One, violation of 47 U.S.C. § 605. Accordingly, Plaintiff will be awarded damages solely on that Count. Section 605(a) provides that "no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception." Likewise, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." *Id.*

A person aggrieved by violation of § 605 may seek actual damages or statutory damages. Plaintiff is seeking statutory damages. Mot. Judg. at 11, ECF No. 15. Pursuant to § 605(e)(3)(C)(i)(II), "the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." Further, "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section." *Id.* at § 605(e)(3)(C)(ii). Conversely, "[i]n any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." *Id.* at § 605(e)(3)(C)(iii). Here, Plaintiff seeks an award of $110,000, which comprises the maximum amount of principal statutory damages—$10,000—and the maximum amount of enhanced statutory damages—$100,000. "Intent is immaterial to liability, but intent is

relevant to the calculation of plaintiff's remedies with regard to the augmented amounts for liquidated damages for willful violations." *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08CV1259, 2009 WL 1767579, at *4 (N.D. Ohio June 22, 2009) (internal citations omitted).

Plaintiff argues that the Court should award enhanced statutory damages because Defendants' violation of § 605 was willful, but Plaintiff has not provided sufficient evidence of willfulness. The statute does not expressly define what constitutes a "willful" violation, and courts have interpreted that word in multiple ways. The Supreme Court has held several times that a civil statute is "willfully" violated if the violator's actions "showed a disregard for the governing statute and an indifference to its requirements." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985). Other courts have found violations of § 605 to be willful "where there were repeated violations over time, or there was a sophisticated understanding of the satellite programming industry and there was a violation of the statutes that regulate the conduct." *Joe Hand Promotions, Inc. v. Easterling*, No. 4:08CV1259, 2009 WL 1767579, at *6 n.2 (N.D. Ohio June 22, 2009) (citing *Cable/Home Communication Corp. v. Network Prod.*, 902 F.2d 829, 851 (11th Cir.1990); *Home Box Office v. Champs of New Haven, Inc.*, 837 F.Supp. 480, 484 (D.Conn.1993)).

The internal structure of § 605 provides some information regarding Congress's intent in authorizing enhanced damages for "willful" violations. Specifically, the damages portion of § 605 identifies three categories of violators. First, there are violators who act willfully and for purposes of commercial advantage. § 605(e)(3)(C)(ii). Those violators may be liable for damages up to $100,000 (but not less than $10,000). Second, there are violators who did not act willfully, who may be liable for damages of up to $10,000 (but not less than $1,000). And, third, there are what might be termed "oblivious" violators: those that were "not aware and had no reason to believe

that [their] acts constituted a violation of this section." § 605(e)(3)(C)(iii). These violators may be found liable for damages as low as $250.

The existence of the third category of violators strongly suggests that Congress did not intend for violators who were negligent in their violation of the statute to be "willful" violators. Rather, that distinction—between individuals who should have known better and individuals who naively violated the statute—is reflected in the second and third categories of violators. In other words, to justify damages for a willful violation, Plaintiff must do more than show that Defendants should have known that showing the fight pursuant to a private use license was illegal. And Plaintiff has not advanced allegations or otherwise identified information which would support such a finding.[3]

> Thus, Plaintiff is entitled only to normal, not enhanced, statutory damages.[4]
>
> Nationwide, courts have used various methods of determining an appropriate amount of statutory damages. Some courts fashion an award by considering the number of patrons who viewed the programming, often multiplying that number by the cost if each had paid the residential fee for watching such programming. Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff. Other courts award a flat amount for a violation.

*J & J Sports Prods., Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 676 (D.S.C. 2011).

In the past, this Court has calculated § 605 damages by determining the commercial licensing fee that the defendant should have paid. *See J & J Sports Productions, Incorporated v. Dugan*, et al, Case No. 08-cv-11159, ECF No. 21 at 3–4 (E.D. Mich. Jan. 29, 2009). This approach

---

[3] *See also Garden City Boxing Club, Inc. v. Polanco*, No. 05 CIV. 3411 (DC), 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006), aff'd, 228 F. App'x 29 (2d Cir. 2007) ("[P]laintiff is entitled to an enhancement of damages due to my finding that defendants' conduct was willful and for commercial gain, although I am mindful that defendants run a small business, their profit from exhibition of the fight was likely minimal, and, although the amount of damages should be an adequate deterrent, the violation is not so serious as to warrant putting the restaurant out of business.").

[4] Perry is a business owner and presumably derives income on a regular basis from showing sporting events on televisions in his bar. As such, he should have known that showing a pay-per-view fight in his bar pursuant to a private use license was illegal. Thus, a statutory damage reduction pursuant to § 605(e)(3)(C)(iii) is not warranted.

is sensible: Plaintiff was deprived of the commercial licensing fee that it should have received. Damages in the amount of that fee thus operate, via broad strokes, to remedy the harm sustained. Sometimes, courts conduct a "per patron valuation" based on the theory "that the patrons viewing the event without access to the unauthorized showing would have ordered it themselves." *J & J Sports Prods., Inc. v. Guzman*, 553 F. Supp. 2d 195, 198 (E.D.N.Y. 2008) (internal citations omitted). That approach is not unreasonable, but seems to misconstrue the nature of the harm to Plaintiff. Plaintiff's commercial licensing payment scheme is not premised on the number of viewers. Rather, Plaintiff's licensing fees depend on the licensee's capacity. A licensee buys a commercial license to show the fight and accepts the risk that it may not attract enough business to justify the outlay. To compensate Plaintiff only for the patrons who actually viewed the fight, as opposed to the fee that Defendants would have had to pay to legally show the fight, passes that risk of poor turnout onto Plaintiff.

Thus, Plaintiff will be awarded statutory damages in the amount of the commercial licensing fee that Defendants should have paid. Plaintiff has provided an affidavit from its investigator indicating that Perr's Pub has a capacity of approximately 200. Aff. at 2, ECF No. 15, Ex. 6. Plaintiff has also provided a document listing its commercial licensing fees for the Mayweather-Pacquaio fight. For establishments with a capacity of between 101 and 200 persons, the fee is $6,000. Fee Schedule, ECF No. 15, Ex. 7. Plaintiff will be awarded judgment in that amount.

## C.

Finally, Plaintiff requests reasonable attorney fees and costs. Pursuant to § 605(e)(3)(B)(iii), the Court "shall direct the recovery of full costs, including awarding reasonable

attorneys' fees to an aggrieved party who prevails." Thus, § 605 mandates an award of reasonable attorney fees to the prevailing party.

The starting point in determining the reasonableness of attorneys' fees is the "lodestar" method. *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). Under this method, a reasonable rate is calculated by multiplying "the number of hours reasonably expended" by "a reasonable hourly rate." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)) (internal quotation marks omitted). "Next, the resulting sum should be adjusted to reflect the result obtained." *Id.* (internal quotation marks omitted). Adjustments may be made "to reflect relevant considerations peculiar to the subject litigation." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).

Plaintiff requests compensation for 17.40 hours billed at a rate of $245 per hour. *See* Invoice, ECF No. 15, Ex. 8. In calculating the "reasonable hourly rate," courts "should initially assess the '*prevailing market rate in the relevant community*.'" *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). According to the 2014 Economics of Law Practice published by the State Bar of Michigan, the median hourly rate for civil litigators is $275. Econ. Law. Prac. at 6, ECF No. 15, Ex. 9. Plaintiff's requested rate is eminently reasonable.

Likewise, the 17.40 hours which Plaintiff has billed for is reasonable. Plaintiff's counsel spent just 2.10 hours drafting the complaint and only 5.20 hours preparing the motion for judgment on the pleadings and default judgment. Invoice at 2, 4. The large majority of the remaining entries are for .3 hours or less. Given this case's procedural history, 17.40 hours is not unreasonable.

The last step in the lodestar analysis is determining if any reductions to the lodestar figure are warranted. The Sixth Circuit has incorporated the twelve factors set forth by the Fifth Circuit

in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), as a starting point for determining if adjusting the lodestar figure is warranted. *Adcock-Ladd*, 227 F.3d at 349.

> These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Reed v. Rhodes*, 179 F.3d 453, 471–72 n.3 (6th Cir. 1999) (citing *Johnson*, 488 F.2d at 717–19). "[M]odifications [to the lodestar] are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349-50 (6th Cir. 2000) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). A district court awarding fees "must provide a clear and concise explanation of its reasons for the fee award." *Wayne*, 36 F.3d at 533 (quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)). Here, Plaintiff does not identify any exceptional circumstances which would warrant a departure from the lodestar figure.

Plaintiff also requests costs incurred during filing and service in the amount of $523.96. Plaintiff provides an invoice which corroborates that figure. Each cost incurred was necessary to bring this suit to completion. Because prevailing parties who are entitled to attorney fees are also routinely compensated for costs incurred during the litigation, Plaintiff will be compensated for the costs incurred during litigation. Accordingly, Plaintiff will be awarded attorney fees in the amount of $4,091.50 and costs in the amount of $523.96, for a total award of $4,624.46.

### IV.

Accordingly, it is **ORDERED** that the order to show cause, ECF No. 14, is **DISMISSED.**

It is further **ORDERED** that Plaintiff's motion for judgment on the pleadings and for default judgment, ECF No. 15, is **GRANTED.**

It is further **ORDERED** that default judgment is **GRANTED** for Plaintiff on Count One, Two, and Three of Plaintiff's complaint, ECF No. 1.

It is further **ORDERED**, in accordance with Federal Rule of Civil Procedure 55, judgment on Count One of Plaintiff's Complaint is entered in favor of Plaintiff J & J Sports Productions, Inc., and against Defendants Perr's Pub, Inc., and Michael J. Perry in the amount of **$6,000.**

It is further **ORDERED** that that Defendants are **DIRECTED** to compensate Plaintiff J & J Sports Productions, Inc., **$4,624.46** for costs and fees incurred in litigating this matter.

Dated: October 26, 2017          s/Thomas L. Ludington
                                 THOMAS L. LUDINGTON
                                 United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 26, 2017.

                                 s/Kelly Winslow
                                 KELLY WINSLOW, Case Manager